[Cite as *State v. Jones*, 2010-Ohio-4823.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

STATE OF OHIO,                                    CASE NO. 9-10-09

   PLAINTIFF-APPELLEE,

 v.

TIMOTHY ALLEN JONES,                          **O P I N I O N**

   DEFENDANT-APPELLANT.

**Appeal from Marion County Common Pleas Court**
**Trial Court No. 09-CR-066**

**Judgment Affirmed**

**Date of Decision:  October 4, 2010**

**APPEARANCES:**

   *Kevin P. Collins,* **for Appellant**

   *Brent Yager,* **for Appellee**

**SHAW, J.**

{¶1} Defendant-Appellant Timothy A. Jones ("Jones") appeals the January 11, 2010 judgment of the Marion County Court of Common Pleas convicting him of felonious assault, sentencing him to eight years in prison for the offense and designating him as a repeat violent offender which added four years to Jones' sentence for a total twelve-year prison term.

{¶2} The facts giving rise to this case took place at the Multi-County Correctional Center in Marion, Ohio. In February 2009, Jones was placed in the Multi-County Correctional Center while he awaited trial on charges stemming from a separate incident from this case. Inmate Joshua Criswell ("Criswell") was also residing in the jail at this time due to his convictions on charges unrelated to the instant case.

{¶3} On April 8, 2009, at approximately 9:30 p.m., a physical altercation occurred between Jones and Criswell over an item of commissary that Jones claimed Criswell owed to him. The fight occurred outside Criswell's cell. One of the surveillance cameras in the jail captured the episode. The recording depicted Jones engaging Criswell in the fight by taunting him, then shoving forcefully and punching him. After the first punch, Criswell fell to the floor. It was evident from the recording that Jones dispensed multiple punches and kicks in the direction of Criswell's body which was positioned on the floor. However, the camera was

unable to capture the actual contact blows that Jones made with Criswell's body because the camera had a partially obstructed view of the location where the fight occurred. After about twenty seconds, another inmate stepped-in to break-up the fight. Jones returned to the location where he was standing before the altercation. However, the recording clearly depicts that it took Criswell some additional time to collect himself and stand up before returning to his cell.

{¶4} Approximately one hour later, at 10:30 p.m., Criswell complained to the Corrections Officer on duty that he was experiencing stomach pains. When asked about the cause of his pain, Criswell initially stated that he fell out of his bunk, claiming that he did not want to reveal the altercation with Jones to the jail authorities. After the Corrections Officer continued to express her disbelief with his story, Criswell eventually disclosed the incident with Jones. Criswell was taken to the medical unit in the jail for observation and to be examined by the nurse, Rita Bader, when she arrived on duty in the morning.

{¶5} Nurse Bader arrived the next day around 8:00 a.m. and examined Criswell who continued to complain of stomach pains. Bader's initial examination did not detect any irregularities with Criswell's body; however she continued to monitor his condition throughout the morning. Criswell's complaints about his stomach pains did not abate. Criswell complained that the pain had spread from

his stomach to his shoulder. After performing a subsequent examination, Bader noticed that Criswell's abdomen appeared distended.

{¶6} Upon this change in his condition, Criswell was sent to the Morrow County Hospital where the emergency room physician examined him and ordered a CAT scan to be performed on his chest and abdomen. The CAT scan revealed that Criswell was bleeding internally. Criswell was "MedFlighted" to Grant Medical Center in Columbus where it was determined that he suffered from a ruptured spleen. Emergency surgery was performed and over a liter of blood was removed from Criswell's stomach. Criswell remained hospitalized for a significant time following the surgery.

{¶7} The video recording of the altercation between Jones and Criswell was retrieved and viewed by the jail authorities. The recording confirmed that Jones was Criswell's assailant in the fight. After an internal investigation, Jones was disciplined and given sixty days of lockdown and loss of visits and commissary.

{¶8} The Marion Police Department also conducted an investigation of the incident. On April 16, 2009, Jones was indicted on one charge of felonious assault in violation of R.C. 2903.11(A)(1), a second degree felony. On April 30, 2009, the indictment was amended to add a specification to designate Jones as a repeat violent offender pursuant to R.C. 2929.14(D)(2) and R.C. 2941.149. The

parties stipulated to a bifurcated adjudication of the felonious assault charge and the repeat violent offender specification.

{¶9} On September 24 and 25, 2009, the felonious assault charge was tried before a jury. Several witnesses testified including Jones, Criswell, Nurse Bader and the Morrow County Hospital emergency room doctor who examined Criswell. At the close of the evidence, the jury found Jones guilty of felonious assault.

{¶10} On December 30, 2009, the specification to designate Jones as a repeat violent offender was tried before the bench. After considering the evidence before it, the trial court found Jones to be a repeat violent offender and proceeded with sentencing which was journalized in its January 11, 2010 Judgment Entry. The court sentenced Jones to a prison term of eight years on the felonious assault conviction and an additional four years for Jones' designation as a repeat violent offender, for a total of twelve years. The trial court also advised Jones that he was sentenced to a mandatory term of three years of post-release control.

{¶11} Jones now appeals from this judgment, asserting the following assignments of error.

### ASSIGNMENT OF ERROR I

**THE RECORD CONTAINS INSUFFICIENT EVIDENCE TO SUPPORT DEFENDANT-APPELLANT'S CONVICTION ON THE REPEAT VIOLENT OFFENDER SPECIFICATION**

## ASSIGNMENT OF ERROR II

**DEFENDANT-APPELLANT'S CONVICTION FOR FELONIOUS ASSAULT IS CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE**

## ASSIGNMENT OF ERROR III

**THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT-APPELLANT BY ALLOWING THE PROSECUTOR TO CROSS EXAMINE HIM ABOUT PREVIOUS FELONY CONVICTIONS**

## ASSIGNMENT OF ERROR IV

**THE DEFENDANT-APPELLANT'S CONVICTION WAS OBTAINED BY FALSE AND MISLEADING TESTIMONY BY THE STATES [SIC] WITNESS JOSHUA CHRISWELL [SIC] WHICH WAS KNOWN BY THE STATE TO BE FALSE**

## ASSIGNMENT OF ERROR V

**DEFENDANT-APPELLANT'S TRIAL COUNSEL, ATTORNEY JOHN [SIC] DOYLE, WAS INEFFECTIVE AS COUNSEL IN THAT HE FAILED TO EXAMINE THE MEDICAL RECORDS FROM THE MULTI COUNTY JAIL BELONGING TO JOSHUA CHRISWELL [SIC] AND TO HAVE THEM ADMITTED AS EVIDENCE**

## ASSIGNMENT OF ERROR VI

**THE TRIAL COURT ERRED WHEN IT FOUND THE APPELLANT GUILTY OF BEING A REPEAT VIOLENT OFFENDER PURSUANT TO R.C. 2929.14(D)(2)/R.C. 2941.149 AND R.C. 2929.01(CC) AS CONTAINED IN HIS INDICTMENT**

## <u>ASSIGNMENT OF ERROR VII</u>

**THE TRIAL COURT ABUSED IT'S *[SIC]* DISCRETION WHEN IT DENIED THE DEFENDANT-APPELLANT'S MOTION FOR EXPERT WITNESS AND EXTRAORDINARY FUNDS**

{¶12} For ease of discussion, we elect to discuss Jones' assignments of error out of order.

### *Second Assignment of Error*

{¶13} In his second assignment of error, Jones contends that the jury's verdict convicting him of felonious assault was against the manifest weight of the evidence. When an appellate court analyzes a conviction under the manifest weight standard it must review the entire record, weigh all of the evidence and all of the reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the fact finder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541, 1997-Ohio-52, superseded by state constitutional amendment on other grounds as stated in *State v. Smith*, 80 Ohio St.3d 89, 1997-Ohio-335, quoting *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. Only in exceptional cases, where the evidence "weighs heavily against the conviction," should an appellate court overturn the trial court's judgment. *Id*.

{¶14} The jury found Jones guilty of felonious assault under R.C. 2903.11(A)(1), which provides, in pertinent part:

> **(A)** **No person shall knowingly do * * * the following:**
>
> **(1)** **Cause serious physical harm to another[.]* * ***

Additionally, "serious physical harm" means any of following:

> **(a)** **Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;**
>
> **(b)** **Any physical harm that carries a substantial risk of death;**
>
> **(c)** **Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;**
>
> **(d)** **Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;**
>
> **(e)** **Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.**

R.C. 2901.01(A)(5). Finally, R.C. 2901.22(B) provides that:

> **A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist.**

{¶15} In the case sub judice, Jones admits that he assaulted Criswell during the incident at the Multi-County Correctional Center. Jones further acknowledges

that Criswell's injury of a ruptured spleen constitutes serious physical harm. However, Jones disputes that the prosecution proved beyond a reasonable doubt that his actions in the altercation with Criswell caused the injury to Criswell's spleen which resulted in Criswell suffering serious physical harm.

{¶16} Specifically, Jones maintains that Criswell's interactions with other inmates a day or two before Jones' fight with Criswell could have caused Criswell's spleen injury. Jones and other inmates testified that "horseplay" and "roughhousing" which consisted of inmates throwing "body punches" at one another, was a common occurrence at the jail. Jones testified that the day before the altercation with Criswell, he observed Criswell and another inmate, Anthony "Smug" Brown, throwing "body shots" at each other.

{¶17} Aside from the possibility of others causing Criswell's spleen injury, Jones also argues that the physical contact he made with Criswell during the alteration could not have caused Criswell's spleen to rupture. On the stand, Jones admitted that he swung hard when he punched Criswell. However, Jones maintained that he only hit Criswell in the chest twice, once with each fist. Jones also argues that because Criswell was lying on the ground, the force of his punches was lessened because he had to bend over to punch Criswell, and therefore, according to Jones, his punches could not have been forceful enough to cause Criswell's spleen to rupture.

{¶18} Contrary to Jones' doubts about his actions in the altercation causing Criswell serious physical harm, there was ample evidence demonstrating that the blows Criswell endured during the incident with Jones caused the injury to his spleen. The recording from the jail's surveillance camera showed that Criswell was downstairs near the jail's day area just prior to the altercation. Jones was upstairs leaning against the balcony. Criswell testified that Jones began yelling down to him claiming that Criswell owed him some Ramen Noodles, aka "soup." Criswell testified that he climbed up the stairs telling Jones that he would not give him the "soup." The recording depicts Jones then walked to Criswell's cell, which was located at the top of the stairs. Criswell testified that Jones stated that he would just take the "soup" out of Criswell's cell. At that point, Criswell testified that he ran toward his cell and attempted to slam the cell door shut to prevent Jones from taking his "soup."

{¶19} Criswell recalled that after he slammed his cell door, Jones pushed and hit him causing Criswell to fall down. While on the floor, Criswell remembered covering-up his mid-section with his arms trying to protect himself from Jones. Criswell could not recall if Jones kicked him, but he was adamant that Jones punched him hard once on each side. Criswell described Jones' punches "like he put his force into it. It's the hardest I've ever been hit in my life." (Tr. Trans. p. 157).

{¶20} Criswell testified that he did not attempt to fight back against Jones' punches, but remained on the floor covering his mid-section until Inmate "Smug" Brown pulled Jones away from Criswell. Criswell testified that Jones' punches ruptured his spleen. Criswell stated that immediately after the incident with Jones he could feel that something was wrong. Criswell described the pain: "I was having real shooting pain clear up the side of my chest. Every time I sat down, it was an extreme pain. It was the worst pain I ever felt in my life." (Tr. Tran. P. 157).

{¶21} Criswell testified that eventually the pain grew so intense that it prompted him to use the jail's intercom to summon the Corrections Officer on duty. Criswell remembered being taken down to the medical ward to await Nurse Bader's arrival in the morning. Criswell testified that he continued to experience the worst pain of his life throughout the night. Nurse Bader testified that when she arrived in the morning, Criswell explained to her that he had been assaulted by another inmate. Upon noticing that Criswell's distended abdomen, Nurse Bader made the decision to send Criswell to the Morrow County Hospital.

{¶22} Dr. Sayre, the emergency room physician at the Morrow County Hospital, testified that upon his initial examination, Criswell described Jones's attack as being the source of his injury. Dr. Sayre testified that Criswell's heart

rate and blood pressure were low and that Criswell appeared to be getting sicker and sicker.

**{¶23}** Dr. Sayre explained that the spleen is an organ located on the "high left side of the belly." (Tr. Trans. p. 128). Dr. Sayre further explained that a severe blow to the spleen could cause it to rupture. Dr. Sayre stated that "spleens don't bleed for no reason. There has to be some sort of trauma." (Tr. Trans. p. 133). Dr. Sayre testified that when a person experiences a spleen injury of Criswell's nature, the person will get sicker and sicker as the internal bleeding increases causing the person to eventually die.

**{¶24}** With regard to Jones' claims that Criswell's "horseplay" with another inmate could have caused Criswell's spleen injury, there is no evidence that Criswell felt sick or expressed intense pain until after Jones' assault on him. Criswell testified that he suffered from no injury in his ribs or abdomen area until Jones punched him. Furthermore, Criswell testified that he had been to see Nurse Bader the day before the incident with Jones. Criswell stated that he went to the medical ward because he had a boil on his buttocks and suffered from a toothache, but he adamantly maintained that he suffered from no abdominal pain prior to his altercation with Jones.

**{¶25}** On the stand, Nurse Bader reviewed the medical files from the prison and confirmed that she had seen Criswell on April 7, 2009—the day before

the incident with Jones. Nurse Bader testified that Criswell complained of a boil and a toothache. Nurse Bader also confirmed that Criswell did not voice any complaints about abdominal or stomach pains at that time. Moreover, in the video recording of the incident, Criswell appears to show no sign of injury as he quickly climbed the stairs to prevent Jones from entering his cell. It is not until after Jones' assault on Criswell occurred that there is a noticeable difference in Criswell's body movements as he takes some time to rise to his feet before returning to his cell.

{¶26} Based on the foregoing testimony, we conclude that there was ample evidence for the jury to conclude that Jones' assault on Criswell caused Criswell to suffer serious physical harm. Criswell consistently identified Jones' assault on him as the source of his spleen injury. Criswell's testimony was further corroborated by the testimony of Nurse Bader and Dr. Sayre and the recording from the jail's surveillance camera which captured the incident. Therefore, we can not find that Jones' conviction for felonious assault was against the manifest weight of the evidence. Accordingly, Jones' second assignment of error is overruled.

*Fourth Assignment of Error*

{¶27} In his fourth assignment of error, Jones claims that the Prosecutor knowingly allowed Criswell to give false, misleading and prejudicial testimony

-13-

which harmed his case. As the basis for his contention, Jones specifically takes issue with Criswell's testimony recounting the details of the altercation and maintains that Criswell's testimony was not credible.

{¶28} Initially, we note that "the jury, as the trier of fact, is vested with the power to judge the credibility of witnesses and to determine the weight to be afforded to the evidence presented." *Croft v. State Farm Mutual Auto. Ins. Co.,* 3d Dist. No. 1-01-72, 2002-Ohio-113, citing *Swan v. Skeen* (1974), 40 Ohio App.2d 307, 308-309, 319 N.E.2d 221. As discussed in the previous assignment of error, the jury heard testimony from multiple witnesses concerning the incident between Jones and Criswell in addition to viewing a video recording which captured the event. There was also medical evidence presented supporting a finding that Jones caused Criswell's spleen to rupture. Furthermore, Jones' testified on his own behalf and was afforded an opportunity to provide his version of the incident in order to refute Criswell's testimony that Jones caused Criswell's ruptured spleen.

{¶29} The determination of Criswell's credibility and the appropriate weight to be given to his testimony rested within the province of the jury. In the end, the jury felt that the evidence supported a finding that the prosecution proved beyond a reasonable doubt that Jones caused Criswell serious physical harm. Finally, Jones neither proffers nor points to any indication in the record that the

prosecutor knew any of Criswell's testimony to be false. Therefore, having found no prejudicial error to Jones, the fourth assignment of error is overruled.

*Third Assignment of Error*

{¶30} In his third assignment of error, Jones argues that the trial court erred to his prejudice by allowing the prosecutor to cross-examine him about his previous felony convictions. Specifically, Jones maintains that the prosecution's intent in questioning him about his prior felony convictions was not for the legitimate purpose of impeachment but to present impermissible character evidence to obtain his conviction.

{¶31} "The admission or exclusion of relevant evidence rests within the sound discretion of the trial court." *State v. Sage* (1987), 31 Ohio St.3d 173, 510 N.E.2d 343, paragraph two of the syllabus. We therefore review a trial court's decision regarding the admission of such evidence under an abuse of discretion standard. "Evidence of prior convictions is prohibited except under narrow circumstances." *State v. Jackson*, 3rd Dist. No. 14-10-09, 2010-Ohio-2297, at ¶ 172, citing *State v. Allen* (1987), 29 Ohio St.3d 53, 55, 506 N.E.2d 199. One such circumstance is for impeachment purposes when a defendant testifies. Specifically, "evidence that the accused has been convicted of a crime is admissible if the crime was punishable by death or imprisonment in excess of one year * * * and if the court determines that the probative value of the evidence

-15-

outweighs the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Evid.R. 609(A)(2).

**{¶32}** In the instant case, the record indicates Jones' counsel was the first to elicit testimony from Jones discussing his criminal past by asking Jones about his prior felony conviction for attempted robbery on direct examination. The prosecution then cross-examined Jones more extensively on his criminal record referring to prior judgment entries evidencing that Jones had been also convicted of two burglary offenses and an assault on a police officer. Incidentally, Jones, while on the stand, denied that he had been convicted for the assault on a police officer charge and one of the burglary offenses.

**{¶33}** The only evidence of Jones' prior felony convictions objected to by Jones' counsel at trial, was evidence relating to Jones' 1986 conviction for felonious assault. However, the record indicates that in conformity with Evid.R 609(B) the prosecution supplied Jones with ample written notice via multiple discovery-related filings that it intended to impeach Jones with convictions older than ten years giving Jones sufficient opportunity to contest the use of the evidence at trial.

**{¶34}** After reviewing the record, we cannot conclude that the prosecution elicited testimony from Jones about his prior felony convictions other than for the permissible purpose of impeaching Jones' credibility. Further, we note that the

assault giving rise to this case occurred between two inmates while residing in a correctional facility. Therefore, any prejudice to Jones concerning evidence of his prior felony convictions was lessened due to the fact that Jones was serving time in jail on a prior felony conviction at the time of trial. Accordingly, we do not find that the trial court abused its discretion in permitting the prosecution to cross-examine Jones about his prior felony convictions. Jones' third assignment of error is overruled.

### *Seventh Assignment of Error*

{¶35} In his seventh assignment of error, Jones argues that the trial court abused its discretion when it denied his pre-trial motion for an expert witness and extraordinary funds. With regard to this assignment of error, Jones maintains that an expert witness could have reviewed Criswell's medical records and determined that Jones did not cause Criswell's spleen injury.

{¶36} The Supreme Court of Ohio has held that that due process requires that an indigent criminal defendant be provided funds to obtain expert assistance at state expense "only where the trial court finds, in the exercise of a sound discretion, that the defendant has made a particularized showing (1) of a reasonable probability that the requested expert would aid in his defense, and (2) that denial of the requested expert assistance would result in an unfair trial." *State v. Mason* (1998), 82 Ohio St.3d 144, 150, 694 N.E.2d 932.

{¶37} Here, Jones failed to make a particularized showing to meet either of these requirements. Jones never identified any specific expert or even a specific field of expertise that would aid in his defense. Rather, Jones simply makes blanket assertions that an expert "could" uncover other medical evidence indicating that Jones was not the cause of Criswell's injury and provide testimony to that effect. Moreover, in his motion for an expert and on appeal, Jones simply reiterates his contention that other inmates could have caused Criswell's injury and offers mere speculations that an unspecified "expert" could testify to that fact.

{¶38} As discussed above, Jones was provided ample opportunity to present his defense that other inmates may have caused Criswell's injuries. As part of Jones' defense, three inmates in addition to Jones testified that it was almost a daily occurrence for inmates to engage in "horseplay" which involved throwing "body shots" at one another. Furthermore, Jones was given the same opportunity as the prosecution to subpoena witnesses, including the doctors who treated Criswell's spleen injury. At trial, the prosecution offered the testimony Dr. Sayre, the emergency room doctor who was the first to determine the serious nature of the injury to Criswell's spleen. Jones' counsel cross-examined Dr. Sayre about the possibility of other causes aside from Jones being responsible for Criswell's injury. In addition, Criswell's medical records from the Morrow

County Hospital and Grant Medical Center were admitted into evidence for the jury to review in their deliberations.

**{¶39}** In sum, Jones failed to make a particularized showing of a reasonable probability that an expert would aid in his defense, and that denial of the requested expert assistance would result in him receiving unfair trial. Having not met these requirements, we can not conclude that the trial court abused its discretion when it denied Jones' motion for an expert and extraordinary funds. Jones' seventh assignment of error is overruled.

### Fifth Assignment of Error

**{¶40}** In his fifth assignment of error, Jones maintains that his trial counsel was ineffective for failing to review Criswell's medical records kept by the Multi-County Correctional Center.

**{¶41}** Our review of this issue begins by noting that attorneys licensed by the State of Ohio are presumed to provide competent representation. *State v. Hoffman* (1998), 129 Ohio App.3d 403, 407, 717 N.E.2d 1149. An ineffective assistance of counsel claim requires proof that trial counsel's performance fell below objective standards of reasonable representation and that the defendant was prejudiced as a result. *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph two of the syllabus. In reviewing such a claim, courts are to afford a high level of deference to the performance of trial counsel. *Id.* at 142, 538

N.E.2d 373. Furthermore, tactical or strategic trial decisions, even if unsuccessful, do not generally constitute ineffective assistance. *State v. Carter*, 72 Ohio St.3d 545, 558, 651 N.E.2d 965, 1995-Ohio-104. Rather, the errors complained of must amount to a substantial violation of counsel's essential duties to his client. See *Bradley*, 42 Ohio St.3d at 141-142, 538 N.E.2d 373, quoting *State v. Lytle* (1976), 48 Ohio St.2d 391, 396, 358 N.E.2d 623, imposition of death penalty vacated by *Lytle v. Ohio* (1978), 438 U.S. 910, 98 S.Ct. 3135, 57 L.Ed.2d 1154 (holding Ohio's death penalty scheme in effect at the time was unconstitutional).

{¶42} Moreover, in order to show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, but for counsel's errors, the outcome at trial would have been different. *Bradley*, 42 Ohio St.3d at paragraph three of the syllabus, 538 N.E.2d 373. "Reasonable probability" is a probability sufficient to undermine confidence in the outcome of the trial. *Id.* at 142, 538 N.E.2d 373.

{¶43} In the present case, Jones' sole contention that his trial counsel provided him ineffective assistance is based on his counsel's failure to review the medical records kept by the Multi-County Correctional Center. Jones claims this is significant because these medical records stated that Criswell was given a medication called Zantac—a drug that reduces the amount of acid produced by the stomach—at some point prior to Criswell's altercation with Jones. Jones

maintains that this information "could" have been useful in his defense because it indicated that Criswell "may have" suffered from a stomach ailment which Jones conjectures "could actually have been a preexisting spleen injury that was misdiagnosed." (Appellant's Supplemental Brief, at 7).

{¶44} After reviewing the record before us, we find that Jones' assertion concerning the jail's medical records amount to mere speculation and fail to persuade us that a reasonable probability exists that had the jury have known Zantac was given to Criswell at some point before Jones' assault on Criswell the outcome at trial would have been different. Moreover, as discussed above, both Nurse Bader and Criswell testified that Criswell was not experiencing stomach pains prior his altercation with Jones.

{¶45} Furthermore, counsel's decision regarding the admission of evidence at trial falls within the category of trial tactics and strategy. *State v. Pasqualone,* 121 Ohio St.3d 186, 903 N.E.2d 270, 2009-Ohio-315, at ¶ 24. In reviewing this assignment of error, we do not find that Jones complains of an error amounting to a substantial violation of his trial counsel's essential duties to Jones as his client. Accordingly, we conclude that Jones' trial counsel's performance did not fall below objective standards of reasonable representation. Based on the foregoing, Jones' fifth assignment of error is overruled.

*First and Sixth Assignment of Error*

**{¶46}** Because Jones' two remaining assignments of error are substantially similar, we elect to discuss them together. In his first and sixth assignments of error, Jones maintains that the trial court erred when it found there was sufficient evidence to designate him as a repeat violent offender.

**{¶47}** When an appellate court reviews a record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Monroe*, 105 Ohio St.3d 384, 392, 2005-Ohio-2282, citing *State v. Jenks* (1981), 61 Ohio St.3d 259, superseded by state constitutional amendment on other grounds as stated in State v. Smith, 80 Ohio St.3d 89, 1997-Ohio-355. Sufficiency is a test of adequacy, *State v. Thompkins*, 78 Ohio St.3d 380, 386, 1997-Ohio-52, and the question of whether evidence is sufficient to sustain a verdict is one of law. *State v. Robinson* (1955), 162 Ohio St. 486, superseded by state constitutional amendment on other grounds as stated in *Smith*, supra.

**{¶48}** Initially, we note that the court determined Jones to be a repeat violent offender pursuant to R.C. 2929.14(D)(1)(a). The essential elements of the repeat violent offender specification are set out in R.C. 2929.01(CC):

{¶49} "Repeat violent offender" means a person about whom both of the following apply:

(1) The person is being sentenced for committing or for complicity in committing any of the following:

(a) Aggravated murder, murder, <u>any felony of the first or second degree that is an offense of violence</u>, or an attempt to commit any of these offenses if the attempt is a felony of the first or second degree;

(b) An offense under an existing or former law of this state, another state, or the United States that is or was substantially equivalent to an offense described in division (CC)(1)(a) of this section.

(2) The person previously was convicted of or pleaded guilty to an offense described in division (CC)(1)(a) or (b) of this section.

R.C. 2929.01(CC). (Emphasis added).

{¶50} With regard to the first element, it undisputed that at the time of sentencing Jones was being sentenced for committing felonious assault, a second degree felony and an offense of violence. As to the second element, the prosecution presented to the court a certified Judgment Entry from Cuyahoga County evidencing Jones' previous conviction of felonious assault in 1986 which was also a second degree felony and an offense of violence. Jones argues that the Cuyahoga County Judgment Entry is insufficient to satisfy the second element of the repeat violent offender specification because it fails to identify Jones as the person convicted of the offense stated in the entry.

{¶51} As the basis for this contention, Jones points to a flaw in the Cuyahoga County Judgment Entry which misstates Jones' social security number by one digit in one of the information fields. Despite this typographical error, the Cuyahoga County Judgment Entry correctly states Jones' social security number in another portion of the entry and correctly states Jones' date of birth. Furthermore, at the bench trial regarding his designation as a repeat violent offender, Jones admitted to the court that in 1986 he was previously convicted of felonious assault in Cuyahoga County.

{¶52} We do not find that a minor typographical error was enough to negate the identification of Jones as the person convicted of second degree felonious assault in the 1986 Cuyahoga County Judgment Entry in this instance— especially when Jones admitted to the conviction on the record. Accordingly, we find that there was sufficient evidence for the trial court to conclude beyond a reasonable doubt that Jones had a previous conviction of a second degree felony that was an offense of violence thereby satisfying the second element of the repeat violent offender specification. Consequently, we find no error in the trial court's designation of Jones as a repeat violent offender and as such, Jones first and sixth assignments of errors are overruled.

{¶53} For all these reasons, the judgment of the Marion County Court of Common Pleas is affirmed.

***Judgment Affirmed***

**WILLAMOWSKI, P.J. and ROGERS, J., concur.**

**/jnc**